243955 William Klopfenstein et al versus Fifth Third Bank 243974 Lori Lascaris versus Fifth Third Bank Arguments not to exceed 15 minutes per side Mr. Zavarri for cross appellants Appellants cross appellees. Good morning may it please the court I'm Hassan Zavarri on behalf of appellants I have reserved three minutes for rebuttal. The jury found the fifth third breach the 120% APR term which was repeatedly found to be misleading first by the first panel deciding the motion dismiss and then multiple times by Judge Barrett. Under those circumstances the voluntary payment doctrine had no application since the defense is designed to protect informed choice not concealed breach. In his post trial ruling on the voluntary payment doctrine Judge Barrett said the concept is confusing. He admitted that his inartful instruction may have caused some confusion. In spite of that he held the defense applied because the plaintiffs were misled. Here's what he wrote. Customers believed that 120% APR was accurate and trusted the information defendant provided to them. Plaintiffs had full knowledge of the facts even though defendant had provided them with the information in such a way that they were misled into paying an APR which exceeded the 120% promised in the contract. That internally inconsistent ruling cannot stand for two reasons. First it's law of the case. The fifth third engaged in misleading conduct by providing a false APR. This court made that determination in the first appeal. Judge Barrett made that determination in his TILA ruling and he also determined that in his TILA ruling that the bank knew that they were charging more than 120% APR. So for purposes of this case that is a settled fact. The voluntary payment doctrine is designed to prevent contracting parties from hedging their bets by paying an uncertain obligation and then changing their position later. This defense born out of equity cannot be used to allow a party to get away with actively misleading another party. Second, I was gonna ask you about the voluntary payment doctrine. So these so that you know it's just a distinction between mistake of law and mistake of fact is how I understand kind of legal doctrine. How cases are a little bit all over the board on this so do you have a very concise way for how we're supposed to determine whether the mistake here was one of law or one of fact or whether it's aspects of both and if that if that all so mistake of law and mistake of fact only comes into play if the payer has knowledge of all the facts right so once you determine that the not the payer had knowledge of all the facts then they make a mistake of law then the defense does not apply to them if however like this situation where the payments didn't make the plaintiffs didn't make any mistake at all they weren't even valuing the hundred twenty percent this was their contract this is what they the promise that they were agreed to the testimony was they weren't expecting when you say they didn't make any mistake one way of looking at it is they were told that the fee was going to be ten percent and that's what they paid and that's what they understood the I thought their own testimony was the APR I mean for each of the individuals that that they never worried about the well absolutely your honor with that but the earlier panel in this court held that that has no bearing on the significance of the hundred twenty percent APR term both terms have held that there was an ambiguity in the contract I didn't hold which way to decide it no but it did hold your honor that the hundred twenty percent APR term had to be given meaning so the whole argument before by fifth third was 120 percent APR doesn't matter it's just one for 10 this court held that was not the case that the hundred twenty percent APR was a separate promise that the bank was obligated to adhere to and at trial the jury found that they did not keep that promise and that holding a breach the prior ruling was that a motion to dismiss stage yes it was your suppose we don't agree with that reading so your first argument was that we've already decided suppose we don't agree with that what's your next argument that you don't agree with the first panel okay well we do agree with the first panel we disagree with how you're understanding the first panel well which I guess the part that the hundred twenty percent APR is a separate you're telling us the first panel's already decided that there's that both terms have to be considered so suppose I mean suppose we think that there's actually a question for us to decide whether this is actually a mistake of fact or mistake of law in the sense that judge Barrett did okay right judge Barrett obviously didn't think the Sixth Circuit decision from the motion to dismiss stage was binding on him right well this goes to the question of what is the what are the facts supposedly that the plaintiffs were aware of or weren't aware of and a trial we the whole trial was about hundred twenty percent APR from our perspective during their argument they were just arguing one for ten and what we said the jury that the plaintiffs had to have knowledge of was that they were paying more than a hundred twenty percent APR that was the term of the contract that the jury was instructed to determine whether or not it was breached it wasn't the one for ten term so the question of their knowledge has to go to the hundred twenty percent APR term did they know that they were paying more than a hundred twenty percent APR and the testimony is that they did not there's no evidence that they knew the bank knew the testimony was consistent that the bank knew they were marketing this as lower interest than an APR than a payday loan because they knew that this was higher that was what the evidence was at trial and then the question of whether or not the plaintiffs actually knew there was absolutely no evidence with respect to that what they're saying now is that the knowledge that they were required to have for the defense to apply is one for ten because they say that was the cost of the loan but this court in the first panel held the cost of the loan is the APR judge Barrett held that the cost of the loan is the APR they say that none of their witnesses testified that the cost is reflected by the APR that's untrue they're their expert testified they paid a higher higher cost based on the length of time so the shorter the time the higher the APR and then their own the architect of the plan Bruce Howard testified that the APR is just a reflection of the cost of credit so they're saying that the relevant fact is the cost right they say that over and over and then they say the cost is one for ten but the contract itself what you call 1% is really 10% is 10% yes I'm sorry I say one for ten one dollar for every ten right right that's okay yes clear the math yeah thank you your honor and the contract says the APR is the measure of the cost of credit expressed as a yearly rate which is the same as the Tila definition the same as the definition adopted by the first panel and judge Barrett found it was the cost of credit so when fifth third argues that the plaintiffs had knowledge of all the relevant facts because they knew that the cost was one for ten they're saying that the cost is not the APR and that simply defies the simple definitions of cost of APR and the reason that we have APR the Fifth Circuit said we have APR because Tila requires it so and as I understand it if they had said we estimated it's a hundred and twenty percent it may vary that would have satisfied Tila am I about that it it might have but it probably wouldn't have actually because they have to give an accurate estimate and the interest rate that people they would have they would have well maybe not important but under your interpretation they would have had to say if you pay in 35 days it's 104% if you pay in 30 days it's 120 if you pay in 25 days it's 150 and they would have had to give an every date depending on when you went to the ATM and took your money out no your honor what they could have said is most people borrow this money for 10 days and if you borrow it for 10 days the interest rate you'd be paying is 365 percent they're required to make a reasonable estimate that's what they knew the bank knew that most people borrowed it for 10 days and the bank knew that under those circumstances people would be paying an APR of 365 percent that would have satisfied Tila but the reason the APR matters the reason that it's an important term in the contract the first panel held the APR has value because it allows customers to compare more readily the various credit terms available so that's what we all use APR for when we're comparing loans of a house we don't look at the bottom line and say oh over the course of this loan I will be paying fifteen thousand dollars in interest so let me compare it to this loan and see how much interest I'll pay what we look at is the APR that's why that's why we have this standardized uniform policy and in the payday lending space the payday lenders all give their APRs and the evidence in this case was that the bank was trying to compete with these payday lenders and was promoting this as less expensive than the payday loans so how would a customer most people borrow for 10 days is that some experts testimony was that known in advance by the bank it was there was internal evidence to that effect that the bank was aware of that and it was expert testimony by plaintiffs expert examining all of the data of the class that on average just a bit a bit more than 10 days and there was internal communications where where employees of the bank said most people probably get two weeks that's 14 days that's 260% interest so this is a lot higher than that this was internal communications and they just you know that the higher ups just sort of stifled that and said no we have our own formula we have our own way of calculating APR and it's a hundred twenty percent I think we were still mostly talking about this voluntary payment doctrine yes I mean we agree with you think we think judge Barrett aired there another hurdle you'd have to overcome is the your friends and their size argument that the court should have granted the rule 50 a motion because you relied on an expert primarily to sort of create I guess an issue of fact about the beliefs between the two sides about what the contract meant so you can you turn to that issue sir your honor so with with respect to the breach of contract most of the arguments that they make are arguments that were already rejected they argue that the text of the contract is clear that it's what I mean I don't know if this is back to the prior Sixth Circuit decision but so as I understand it your clients mostly said that they thought they were paying or almost also they thought they're paying a 10% or 1 for 10 as you describe it a fee and your position is that the bank understood it differently but in your case in chief you didn't present any witnesses from the bank to give their explanation of what they thought it was to sort of create a disagreement in a sense my understanding is you had an expert come in and say here's how people in the industry would have understood this term no your honor that's that that's not accurate we had our first witness was Bruce Howard who was the architect of the plan who testified that the actual APR was in all cases related to the class when every when people paid in less than 30 days was higher than a hundred twenty percent interest and he explained the standard definition of the APR isn't is a reflection of the cost over the course of a year a yearly rate so it wasn't just our expert and their expert came in and testified to the same thing he also testified that the test their expert testified after in other words don't we have to sort of stop the clock at the close of your case and decide at a 50 a GMOL directed verdict whether you've met your burden took for the case to go forward so I would think we wouldn't look at what's been brought in during the defendants part of the case your honor I think that we could have won with on some and should have won on summary judgment with respect to breach of contract the extrinsic evidence the only question I think then then you're the evidence that you presented a trial so you're so I'm very interested in this issue so you you don't seem as interested but I'm this because I you agree your witnesses basically said they thought they were paying the 10% rate right our clients but those weren't our only witnesses yes that's what our your clients okay and then we had an expert who came in and said that the bank should have understood this to be would have understood this to be 120 APR because that's how it's understood in the industry yes but even if you don't credit our expert which I think you should well I can credit your expert to some degree can your expert create a fact issue I mean your expert can't testify to the actual facts that the bank understood it could under stick it testify sort of an industry standard but if you have you have your witnesses saying 10% and you mr. Howard might be a good point we go back to mr. Howard but otherwise you need don't you need someone in during your case in chief to say that the that the bank understood this differently so there's potential here for a breach well that's what that's what mr. Howard testified mr. Howard mr. Howard was a former bank him former yes he was the architect of the plan at the bank at the bank we played one hour of his video deposition and I would commend you to read the transcript or watch the video your honor he absolutely did testify that the APR was higher than 120% when people paid back the loan sooner than than 30 days well that's that's he understood I think the question I was more interested in is did he understand that the bank officials intended this sort of knew this this was their interpretation not sort of how it mathematically applied but that this is what the bank understood so there was a disagreement between the two sides well judge Barrett found that in the summary judgment ruling but going back to the trial we did present evidence emails which are in the record showing that they were communicating with each other mr. Howard testified or in his one of emails said that he was concerned about the Fed looking into their loan and that they would get scrutiny about the hundred twenty percent APR because it was too low so that was other evidence those emails were those emails presented in your case-in-chief yes they were in mr. Howard's testimony all of that was in the case-in-chief yeah yeah this one final question and say this is very litigation complex so you may have an answer dedicated to stages but the whole argument here about there really two price terms the one for ten and the hundred and twenty if I give you a hypothetical that a store says fifty dollar coats now forty dollars twenty five percent off big letters the contract says exactly the same thing well of course it's not 25% off it's only 20% off so if you buy the coat is that a breach of contract because there are two price terms there even though they clearly know you give me forty dollars I get the coat I think it would be your honor there because they're two separate promises right one is that it's it's forty dollars and one is that it's twenty five percent off and they have to honor both of those promises and so now they can but then they can't so they can't sell you the coat period well they could they could you could you know they could change one or they could change the other and part of the question is you know what did the customers understand okay but so your argument would be yes if you say anything about a percentage and your math is wrong then we can't really look at which predominates okay that's that's an answer good morning may it please the court Craig Singer for Fifth Third Bank I want to start with the voluntary payment doctrine but but let's not lose sight of the fact that this was a jury trial the evidence in this two-week jury trial which came after more than a decade of litigation leading up to the jury trial showed that the early access customers knew exactly what they were paying and knew exactly what they were getting they knew they were paying a flat fee of one dollar for every ten dollars they advanced and they even agreed at the point-of-sale to the precise dollar amount that they would pay for each of their early access advances and they got bank statements showing the exact amount they had paid which was always one dollar for every ten dollars and then they took more advances over and over again knowing what they had paid they never paid any attention to the APR language in the contract at all until they talked to their lawyers about this case and that evidence was clearly sufficient for the jury to find the voluntary payment doctrine applied under Ohio law and I'd like to make three points today and the first is that the plaintiffs argument that the voluntary payment doctrine required a showing that the plaintiffs knew they were paying more than a hundred and twenty percent APR is a misreading of Ohio law and in any event there was evidence a trial that the plaintiffs did know that they were not paying based on APR at all they were paying a fixed fee that didn't change second that's that's not inconsistent with there being an APR that varied and they might pay over or under the evidence would show that the plaintiffs were aware of that because they were they were aware that their fee would not vary depending on the time that the loan was taken out the APR might I noticed in your in your brief you were looking at some stuff of the ATM screenshots right which had the fee amount but the appendix in your appendix has ATM screenshots which say a hundred and twenty percent and we don't dispute that we did that the bank said that this was a hundred and twenty percent APR the bank believed that that was the appropriate way to disclose it because it was based on a 30-day payment term assumption which was laid out in the contract that's what the bank thought and I'd like to argue on the breacher did you have a witness that said this is what we thought yeah not just what we did but this is what we thought we had we had multiple witnesses every witness including mr. Howard specifically said that they thought that the payment term was $1 for $10 the APR didn't change that and that the 30 days we also had an expert the expert that referenced his principal testimony that he gave was that it is standard in the industry to take a 12 payment cycle year when you have a fixed fee product because you can't know exactly when the repayment is going to happen and that was all put in front of the jury but what was but what's more important to the voluntary payment doctrine is really not what the contract said or or what 5th 3rd thought at all what matters is what did the plaintiffs think because the question for the jury was whether the plaintiffs the class members had a full understanding of the facts and the evidence was not just sufficient it was overwhelming that they had a full understanding of the facts it showed that every class member before taking out every advance had to specifically approve the precise amount they'd pay and every one of the class testified that they understood the cost of the EAX advance early access advance was $1 for $10 this question about yes so they understood they're paying the 10% fee but there's also the 120% provision in the agreement was there any sense that they thought that those were the same thing those two were the same thing in every instance no there was no sense they even paid any attention to the APR at all or even knew about it and talked to their lawyers and that and that's really the point and mr. Zavarri argued that there's some law that says you have to have a mistake as opposed to ignorance that's wrong if we look at the nationwide case the Ohio State case 425 Northeast second 952 cited in the brief it shows the voluntary payment doctrine applies to ignorance of a legal right not just a mistake as to the legal right and that's also stated that way in jurisprudence and in many of the older cases I mean this doctrines existed in for well over a century been around a long time I think the cases are a little inconsistent with each other when you put them all and I guess I guess the you know there could be dispute that could have there could be both a mistake of fact and a mistake of law it's sort of collectively but if there's any sense of mistake of fact maybe the doctrine doesn't apply which is a little hard to sort it out the cases are hard to start out I think and it seems to me at least that maybe the there was evidence that the bank during the during the when the bank when its case was presented there were some evidence that maybe some people the bank thought it was 120 or they thought that they were maybe you know fooling some of the customers given the sort of conflicting terms so first of all just to answer the first part of your honors question that the jury was instructed that they could find the voluntary payment doctrine if the if the plaintiffs had a full understanding of the relevant facts so the jury decided that there was no misunderstanding mistake of fact or misunderstanding of fact that's what was put in front of them to decide and the plaintiffs counsel had a full opportunity and took believe me a full advantage of the opportunity to argue that the plaintiffs didn't understand the APR they were misled about the APR that even though this wasn't a fraud case we heard all kinds of things in the closing argument about how fifth third was dirty dealing these plaintiffs and the jury did found that the voluntary payment doctrine applied and they were quite right because the plaintiffs didn't care about the APR they didn't think about the APR they cared about what they were paying and they knew by the way all the ingredients that went into the APR if we're talking about what's a mistake of law versus a mistake of fact APR is a calculation that even according to the plaintiffs is based on ingredients that the plaintiffs knew they knew the exact amount that they were of the loan that they were taking out they knew the exact amount they paid they knew the exact interest rate which was zero and they knew the repayment date would be as soon as they got their next direct deposit and that's how you compute an APR so an expert come in to explain what APR meant because it's such a technical term of art so your positions that every every bank customer understood what APR meant because they read all these terms and they put them all together which seems contrary to having an expert need to come in to sort of explain the term because most people would not understand it which I thought was the point of the expert testimony the expert what came in on the breach of contract claim not voluntary payment I don't think because the expert wasn't testifying about what the plaintiffs knew or what was all these all kind of blend a little bit no but look I'm to be clear I'm not claiming that the plaintiffs put all this stuff together and calculated APR but what I am claiming what I am saying is they knew all the facts APR is a legal right what they claim they had a legal right to pay no more than APR because the contract was somehow capped at the APR even though it said ten times that the payment is one for ten and doesn't vary that was their contract claim okay and so the just jump in for a second when you say that they understood and there was no evidence that they misunderstood that it was anything other than one for ten one of the things one of the screenshots that I can't remember who put this in but it specifically said that the associated finance charge with the advance is 10% each time you make an advance which is 120% APR so I don't I get it that you're saying that it's kind of all there and they knew what they were being charged in that kind of a thing but when you have a statement like that that is just a declarative statement that you're going to pay ten percent and that's a hundred and twenty percent APR when factually speaking it's not always going to be a hundred and twenty percent APR because it is going to vary based upon how long it takes for them to pay it back why would a borrower think that there was any reason to question that this is a declarative statement from the bank as to what it is sure and that's and plaintiffs had every opportunity and did argue that theory to the jury the jury found that the plaintiffs had knowledge of all the relevant facts and the reason I would submit that the jury was right to find that I obviously don't know what was in the jury's heads but I think the jury was right to find that because it was clear from the evidence that the plaintiffs knew everything that was relevant to them everything that mattered to them in deciding to pay this is the voluntary payment doctrine did they pay the money voluntarily they paid one dollar for every ten dollars there's no dispute about that the claim was that they should have paid less but they never thought they should have paid less they never thought about the APR what was relevant to them was they knew this was a convenient product that they would get for one dollar for every ten dollars they borrowed it was predictable they understood it they knew the fee wasn't going to vary and the jury concluded that that was a full understanding of the relevant facts the jury could have also concluded because there was plenty of evidence that the jury understood that this was a fixed fee and not a fee that varied and they were given all sorts of evidence including from plaintiffs expert improperly I might add but they were given plenty of evidence from plaintiffs expert about how the capping theory supposedly worked and how the APR you need a time component in order to compute APR accurately you need to know how long the loan is going to be outstanding and the jurors heard evidence that the plaintiffs understood that there actually was no time component to this it was a fixed fee and so they the plaintiffs must have understood that they weren't paying a fixed APR all the time if they had thought about it which by the way they didn't care about the APR when you said that the jury had the jury found that the clients had knowledge of all relevant facts is that a way of saying that the mistake of fact mistake of law argument really is not relevant that the issue is did the clients know all the relevant facts and is there can you point to particular cases that say that at the Supreme Court level of Ohio Supreme Court level sure I mean the all the all relevant facts standard is well established and is that in the case which then explains how that maps on to mistake of fact mistake of law there are cases so let me try to give you I'll try to give you one so actually there's a case in this in this court the selling case which which talks about the distinction between mistake of fact mistake of law where where somebody paid this is another sort of class action case where a plaintiff paid a service charge to a to a car rental company and he said you know I wasn't required to pay this fee because my contract doesn't doesn't require it but he knew what he was paying he knew why he was paying it and even though he later sued to say he didn't know that case did it call it mistake of law yes yes mistake of law payment made by the wrong by a reason of a wrong construction of the terms of a contract is not made under mistake of fact but under a mistake of law and if voluntary cannot be recovered back that different there's just one term that they're disputing versus here there's two terms that conflict is that a different type of case I don't understand why it would be it's still a mistake of law in the sense that you have you have a legal entitlement that's why I think these conflate a little bit sometimes like every mistake of fact would then lead to a mistake of law but at the threshold level is it a mistake of fact or a mistake of law is the way I'm looking at it well I just feels and I understand sort of like a mistake of fact well yeah which has legal consequences and which would lead to mistakes of law I don't agree because it really is a mistake about what the contract required and and and also because the facts that matter are the facts that matter to the plaintiffs when they paid but I think we can put all that aside because this question was given to the jury and the jury was not even told by the way that mistakes of law don't count we asked for that instruction and it would have been a correct instruction under many Ohio cases but we didn't get it all we got was the instruction that if the plaintiffs had a full understanding of all relevant facts and at one point they were even told they had to have actual knowledge which isn't even right but what was the name of the case you were just citing about the rental car service charge selling s-a-l-l okay s-a-l-l-i-n-g got it and it cites Ohio cases the nationwide case and the city of Cincinnati case both Ohio State cases it quotes it actually quotes nationwide quoting Cincinnati is the language I just read I just read to you so but that so all the jury was asked to do was to decide whether the plaintiffs had knowledge of all relevant facts they were not asked to decide between this question of law question of fact issue and they decided the plaintiffs had full knowledge of all relevant facts so the only way I would submit that this court could reverse would be to find that as a matter of law plaintiffs did not have full knowledge of all relevant facts even though the jury found that they did and I think that would be an extraordinary ruling given the way the case was submitted to the jury and they heard two weeks of evidence on this and they heard the plaintiffs clearly say exactly what did matter to them and what they were and what they were looking at I want to spend just a minute on the breach of contract issues because it came up a lot in my friend's argument and I guess I'd like to just make it clear every single fifth third witness who testified including mr. Howard testified that they believed that the cost of the product was $1 for every $10 every single one mr. Howard mr. Earhart mr. Carpenter mr. Mendelsohn all testified at the trial there those were all the fifth third witnesses the only one plaintiffs called in their case was mr. Howard mr. Howard did do the mathematical calculations that your honor asked about and yes he admitted that if you have a term of a loan that's shorter than 30 days you that could add up to more than 120% and all of your other witnesses didn't know that also all of our witnesses believed it was a $1 for $10 charge and sure they do that too I mean everybody admitted if you do the math that's how it works out but the way that the way that the was was set up it said we're using 12 payment cycles so we're using a 30-day payment term and that equates to 120% APR that's the way that's the way they thought they were supposed to do it turned out that was wrong under TILA but that's a TILA claim and speaking of a TILA claim if I can say one more thing at this point for a second so weren't there some emails that suggested that maybe folks in the bank thought otherwise or thought they may point one over here on the some of the customers we first of all this was all in front of the jury and the jury decided the case the way that's different that's not the question I asked I know but they heard all the cases from the jury I get that okay that's what was presented to the jury the answer is no and we there were there were emails internally where fifth third employees were talking about APR and and how does this work given that you have a fixed fee product and that the emails just show that people inside fifth third were struggling with the same thing that we're struggling with here and that the experts were talking about which is what do you do how do you disclose on for TILA purposes not for breach of contract purposes but for TILA purposes how do you disclose an APR for a fixed fee product where you don't know the date that it's going to be repaid and you know ultimately the the decision was made to do it the way that it was but there was the emails don't say we're cheating people we're lying to people and much less do they say what's important here which is that the payment term than $1 for $10 nobody in the world ever thought that the APR language somehow capped the one for ten that was that there's no document no suggestion contract claim and the expert I'm just wanna make sure I understand your rule 50a argument is your argument that the expert witness I think can you know properly testify to what APR means this is technical term the jury needs help with that but that they can't basically put words in the mouth of your clients in other words expert comes in and says the industry standard should have been you know people in the industry should have understood this way but that doesn't suffice to show that that's how your clients did understand the agreement and at the close of the plaintiff's case then they essentially have their clients saying we understood this to be 10% or 1 for 10 and we don't have any evidence from the bank actual fact evidence from the bank that the bank understood it differently is that how I supposed to understand it or am I missing something yeah I think that's a pretty good encapsulation and there's zero fact evidence that anybody thought that the contract meant what the plaintiffs in this case now claim that it meant there was a meeting of the minds of everybody everybody at Fifth Third and all the plaintiffs that the cost of this was a fixed $1 for every $10 and not capped nobody ever said or thought that that it was somehow capped by the APR and the only person who ever suggested that was Miss Oliver who was the expert the lawyer who plaintiffs brought in as their first witness to explain the case to the jury and she gave legal testimony which is improper I mean the and they're one of the side was the Howard testimony and I think your response to that was the Howard testimony was the same it did that I'll go back and look at it but his testimony was that the bank would have understood this also to be one for 10 or 10 percent he said over and over again so he the only thing he agreed with was that you could have a higher APR if you have a shorter time horizon and so it's just a question of how you compute an APR for a fixed fee product but he testified that he understood that the cost the actual cost of early access was $1 for $10 and he never I mean there's no testimony where you'll find that there's some kind of a cap which is the plaintiffs theory of contract here and by the way can I say one more thing which is in connection we heard from from my friend that that part of the problem here is that the plaintiffs couldn't compare the cost of of the early access product to other products because the APR term was wrong well first of all that's the teal issue that's not a breach of contract issue but second these plaintiffs did there's no evidence that they did compare anything because they didn't focus on the APR they weren't looking at the APR so they weren't comparing it to other APRs and that was not the theory of their case because it wasn't the damages they sought they didn't seek damages for the difference between what they got the rate they got it at early access and the rate they could have gotten for some other product they sought breach of contract damages because they claim they were entitled to pay no more than 120% APR as a cap so the comparison of credit is does not enter into this case okay great thank you very much thank you very much so your honors if I may I'd like to go back to the voluntary payment doctrine for something that has not been discussed yet today which I think is a decisive issue which is that the voluntary payment doctrine cannot apply in these circumstances because the the contract language itself was misleading you cannot have a circumstance in which a party can be can get away with using a misleading contract and say well the other side didn't look at it the other side didn't care it doesn't matter if you look at the Arlington video case it made clear that the voluntary payment defense did not apply because it was fifth third was the defendant in that case because they didn't disclose what the fees were for they disclosed that there were fees the the plaintiff was aware that they had fees the plaintiff paid the fees but the court held that the voluntary payment defense did not apply because the bank didn't do what it was supposed to do which is to disclose and that's that's consistent with a Ninth Circuit decision the Rodman versus Safeway decision that held that you cannot have voluntary payment doctrine when that when the defendant is failing to disclose material facts it's also consistent with numerous district court decisions the most important of which is the Schwebel decision because it from the Northern District of Ohio applying Ohio voluntary payment doctrine and declining to apply the doctrine because the defendant could show that that the plaintiff could show the defendant misleadingly represented that the charges were due under the contract and here your honor again my friend from the other side hasn't said anything about this finding that its conduct was misleading its finding that they knew that the APR was higher and that that they violated Tila a law required to enable customers to have the true facts so that they can evaluate loans just so it can be clear the last couple of minutes is basically are you saying that in fact if there's a finding that the contract is misleading then there can't be voluntary payment you don't have to look at whether it was a mistake of fact or mistake of law absolutely this is an equitable doctrine my fifth third hasn't done anything isn't it isn't any kind of time when there's a mistake isn't there misleading some somewhere it could be it could be an innocent mistake you could just someone could have just not known I mean it doesn't have to be that the someone here be being the seller or the or the buyer that that is that when you have a when you have a deal in which somebody makes a mistake isn't the other person misleading them arguably honor but that's not I mean we had that we had the two that the two the two parts versus the one part case if it was ambiguous whether they were charging for one part or two parts that misled the other side right true but here judge Barrett held in deciding the Tila claim that the defendants knew that they were charging more than a hundred twenty percent APR and that's why it was misleading so this is not on a blank slate there was actually testimony there was a finding by judge Barrett that has not been appealed and he has no should that with given that should it not never have gone to the jury absolutely it never gone to the jury that's our principle argument your honor so that we can decide it we don't have to decide mistake of law mistake of fact we can say you should have had judgment as a matter of law absolutely and I think that's the Arlington video case that's the Rodman versus Safeway from the Ninth Circuit and I looked at their briefs there's no mention in in their brief at all about the fact that this court and judge Barrett repeatedly found that the contract was misleading there's no effort to distinguish Arlington video what they say in with respect to Arlington video is that there the plaintiff was unaware it was paying the fee at all that's incorrect the plaintiff was aware it was paying the fee it just didn't know what the fee was before they paid it because fifth third didn't disclose it and that's the same video actually well didn't both of those involve just a failure to disclose at all to give the information but it didn't involve an instance where there were conflicting terms where all of the information is there these terms conflict and there is this very difficult or at least for me because I'm not a math person there was this difficult formula that was in there where you could have figured out that it was actually more than a hundred and twenty percent under some circumstances there were not conflicting terms your honor but respectfully I would say that that does that the only question for this court is 120% APR term we don't argue that they breached the one for ten this court previously held that the 120% APR term was the one that was at issue that's what we tried and here's what judge Barrett said about Arlington which is I think indicative of the issues he said in contrast to Arlington video information about the APR was disclosed to early access customers in the contract however as the evidence that trial confirmed the information defendant provided to its customers about the APR misled those customers so this is worse he says this is worse than Arlington Arlington they just didn't disclose it here they disclosed it but the information was false and it actually misled the customers so from from that basis this is actually much worse and there's no circumstances which the doctor but the rule 50 a issue that I've been asking about any further thoughts I do I do your honor a couple of things so this case could have ended started out sort of similar to the Perry versus Allstate case that you wrote the concurrence in with the first time it was up there's an ambiguous contract term right it was 120% APR and the court held it was ambiguous because there was a definition of an annual rate expressed over definition of APR the standard definition interest expressed as an annual rate right and then there was also this formula that always reached 120% and the first panel held well these are two conflicting terms and both are reasonable that was that so what were we supposed to decide the court didn't do what it did in Perry versus Allstate and then just decide which one was reasonable so they're both reasonable go down to the jury let the jury decide which one is reasonable we believe that Judge Barrett should have determined that ours was reasonable but in any event he didn't it went to the jury and the jury was required to as it was determining which one was reasonable if it found that our interpretation was reasonable and the bank's interpretation was reasonable using all of the extrinsic evidence at that point it was required to apply the doctrine of contra pro for entum there is a tiebreaker here your honor to the extent that they're interpret it and remember what we're comparing draw that from Ohio law yes your honor those are insurance cases that you referenced Perry that doctrine is applied most often in insurance cases and it feels like potentially sort of a special or at least heightened rule in an insurance context I would say it applies in any contract of adhesion your honor contra pro for endom because there's an imbalance of bargaining that were cited I thought most of the cases that were cited were Ohio insurance law cases many of them are your honor that is correct but in general the law relating to the doctrine of contra pro for endom governs contracts of adhesion and that I mean our clients had no ability to say what the meaning of the contract was this idea that you're going to look at the like a normal contract between two business entities and go back down and try and figure out well what do the parties mean when they were negotiating this contract it has no meaning here the plaintiffs didn't negotiate anything this contract was was foisted on them they had no choice so how do you determine whose interpretation is correct okay great well thank you thanks to both sides a well-argued case obviously not an easy case and we will take it under advisement